(No. 11441.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* FRED C. FORSTER, Plaintiff in Error.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. PRACTICE—*when alleged error in amending record will not
be considered.* Alleged error of the trial court in amending the
record of a criminal case to show the truth after it was discovered
in the Appellate Court that the clerk of the lower court had er-
roneously caused the record to show that the first three counts of
the indictment, instead of the last three, were *nolle prossed,* will
not be considered by the Supreme Court where the point was not
raised in the Appellate Court.

2. CRIMINAL LAW—*when it is not material whether money or
check was obtained.* Where the evidence shows a conspiracy on
the part of the accused and another person to obtain the money
of a certain corporation by false pretenses to cheat and defraud
the corporation, it is not material whether the money or a per-
sonal check of the corporation was obtained.

3. SAME—*what is sufficient proof of corporate existence.* On a
trial for conspiracy to obtain the money of an alleged corporation
by false pretenses, testimony that the witness is the manager and
one of the directors of the company, that the company has a presi-
dent and does business under the company's name and that suits in
its name were pending, together with proof of a certificate signed
by the Secretary of State that the company was incorporated un-
der the laws of New Jersey and was entitled to do business as a
corporation in Illinois, is sufficient to show the corporate existence
of the alleged corporation.

4. SAME—*a certificate of the Secretary of State is prima facie
evidence of corporate existence.* A certificate of the Secretary of

State that a certain company is a foreign corporation and entitled to do business as a corporation in Illinois is *prima facie* proof of corporate existence, and the fact that the certificate has been in existence many years does not tend to show that it has expired.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. JOSEPH A. FITCH, Judge, presiding.

STEIN, MAYER & STEIN, (SIGMUND W. DAVID, and WILLIAM S. HEFFERAN, JR., of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and NOAH C. BAINUM, (GEORGE C. BLISS, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county for a conspiracy with John Edison (also called J. J. Edison) to cheat and defraud the National Lead Company, and on trial by jury was found guilty and sentenced by the court to two years in the penitentiary and to pay a fine of $1000. The case was taken to the Appellate Court, where the judgment of the trial court was affirmed. It has been brought to this court by writ of error for further review.

The indictment consisted of six counts. The last three, on motion of the State's attorney, were *nolle prossed* in the trial court. Plaintiff in error was found guilty under the first three counts of said indictment. The first count charged a conspiracy between Forster and Edison to obtain by false pretenses a check for $506.08 and lawful money of the United States to that same value, the property of the National Lead Company, a corporation, and to

cheat and defraud the said company. The second count charged a conspiracy to obtain by false pretenses divers large sums of money and property of the National Lead Company, a corporation, and to cheat and defraud the said company thereof. The third count is substantially the same as the first.

After plaintiff in error's brief was filed in the Appellate Court the State's attorney discovered for the first time that the clerk of the criminal court, as indicated by the record in the Appellate Court, had erroneously entered an order showing that the first three counts in the indictment had been *nolle prossed* instead of the last three. The State's attorney then made a motion before the trial judge to amend the record to show the proper order, which was, that the last three counts of the indictment were *nolle prossed* by the State's attorney and not the first three counts, as the record then seemed to show. Notice was served on counsel for plaintiff in error on this question and he was present at the time the order amending the record was entered, based on the minutes of the trial judge. The record does not show any objection taken to this order at that time. This amended record was filed in the Appellate Court. No point was made in that court that the order amending the record was made without authority or was insufficient generally. This is conceded by counsel for plaintiff in error. It has been frequently held by this court that we will not consider a point which is not raised in the Appellate Court but is raised for the first time here. No errors will be considered other than those which were presented in the Appellate Court. *Buck* v. *Rosenthal,* 273 Ill. 184; *Wurlitzer* v. *Dickinson,* 247 id. 27; *People* v. *Strauch,* 240 id. 60; *Dyas* v. *Dyas,* 231 id. 367.

Counsel for plaintiff in error concede that this rule has been laid down by this court but think we should differentiate in this case because the record had not been amended at the time they filed the original brief in the Appellate

Court. They could easily have raised the question by motion to strike the amended record from the files in that court. Of course, the original order showing that the first three counts had been *nolle prossed* and not the last three was shown in the record at the time the case was taken to the Appellate Court, and counsel for plaintiff in error could have raised that question before the record was attempted to be amended. We do not think there is merit in the argument that the court in this case should depart from the usual rule that a point not raised in the Appellate Court can not be raised for the first time here. This being so, it is unnecessary for us to consider or decide the question whether the trial court was authorized to make the amendment in question.

Counsel for plaintiff in error further insist that the crime charged in the indictment, or in any of the three counts that were not *nolle prossed,* was not shown by the proof to have been committed. The case, as stated, went to the jury upon the first three counts of the indictment, charging conspiracy between Forster and Edison to obtain a check and money from the National Lead Company by false pretenses. Two of the counts charge special instances of this, and the other count charges, generally, that they entered into such conspiracy.

Counsel for plaintiff in error argue that the proof in this case shows, at most, only a conspiracy to obtain a personal check of the National Lead Company, and that under the decision of this court in *People* v. *Warfield,* 261 Ill. 293, and cases there cited, no crime was committed by obtaining such a check. We think the evidence, however, in this case proves clearly a conspiracy between Forster and Edison to obtain money from the National Lead Company by false pretenses and to cheat and defraud said company. It makes no difference whether the money was actually obtained or whether said check was obtained. In the case of *Ochs* v. *People,* 124 Ill. 399, the court said (p. 423): "It was not

essential to the crime charged that there should have been the obtaining of money by false pretenses or that there should have been false pretenses used. It would be enough if there was a conspiracy to obtain money by false pretenses. There might have been the conspiracy and yet it not be carried out." And again, on page 426: "And we think there might be a conspiracy to obtain money of another by false pretenses although accomplishment of the object of the conspiracy might be impossible." In *People* v. *Warfield, supra,* the court said (p. 321) : "The offense charged in this indictment was complete when the conspiracy was formed and entered into. It is therefore immaterial whether the alleged conspiracy actually resulted in the obtaining of the checks, notes and contract of Mrs. Patten instead of her money, except in so far as it tends to throw light upon the actual object of the conspiracy. The testimony tended to prove that it was the design of plaintiff in error and MacFarland to secure the money of Mrs. Patten, as was charged in the indictment." We think the same may be said in this case. The ultimate object of the conspiracy was not to obtain the personal check of the National Lead Company but to obtain its money, and beyond doubt the proof shows that there was a general conspiracy of this character. The evidence as to the proof of the conspiracy will be set out more in detail later.

Plaintiff in error further alleges that there was no proof that the National Lead Company was a corporation. It is shown by the testimony of one Field that he was the manager and one of the directors of the National Lead Company; that the concern had a president and did business under that name; that suits were pending brought in the name of the National Lead Company, and a certificate was offered in evidence, signed by the then Secretary of State, dated September 28, 1897, in which it was certified that the National Lead Company, incorporated under the laws of the State of New Jersey, was entitled to do business as

a corporation within this State. It seems to be argued by counsel for plaintiff in error that the proof did not show that this license was granted to this company. We think the proof showed that fact. Furthermore, that point was not made by attorneys for plaintiff in error at the time this proof was introduced. He was then represented by different counsel from those who now represent him in this court. This license or certificate was the authority of the company to do business in this State, and we think it sufficient proof of that right. Nothing was said in *People* v. *Struble, 275* Ill. 162, or in the cases there cited, that in any way militates against this conclusion. On the contrary, under the reasoning in that case this license was proper proof of the incorporation of the National Lead Company or of its right to do business here. The mere fact that it was issued years before in no way tended to prove the license had expired.

Counsel for plaintiff in error further insist that the prosecuting attorneys during the trial of the case made certain remarks prejudicial to plaintiff in error, and that as the case was close upon the evidence these remarks should reverse the case. Counsel claim that the remark of the assistant State's attorney to the jury in opening the case, that the co-defendant, Edison, had skipped to California, was prejudicial, even though the court ordered the remark stricken from the record. It is also objected that attorney Ferguson, who was assisting the prosecutor, attempted to make improper remarks as to what the evidence was, and there was no evidence in the record as a basis for the remarks. When a witness for the State was being examined on re-direct examination by assistant State's attorney Bliss, he was asked whether or not there was any tin pipe received by the National Lead Company. Witness answered, "There was none other received during that month." Then Ferguson interjected the statement, "Even that wasn't received." This statement was objected to, and Ferguson said, "I remarked to counsel; I don't suppose anybody

heard it." The court then said: "You shouldn't make such a remark; you have a right to try your case on the evidence and not by suggestions; such remarks are entirely improper and the jury will entirely disregard them." Assistant State's attorney Bliss in the closing argument, it is charged, made certain remarks about a book which was not introduced in evidence and why it had not been introduced by plaintiff in error. The record shows here, also, that when objection was made the State's attorney replied that he had a right to reply to counsel who made reference to this. The record does not show the argument of the attorney for plaintiff in error on this point. The court sustained the objection and told the State's attorney that in view of the record he should not have made the remark.

Counsel for plaintiff in error concede that those remarks might not reverse a case, under the rulings of this court, unless the evidence was close. The evidence shows that on March 4, 1910, Edison, who was indicted with plaintiff in error, presented a receipt to the cashier of the National Lead Company purporting to show that the Chicago Beer Pipe Cleaning and Supply Company had delivered to the National Lead Company 1472 pounds of scrap tin and 1060 pounds of scrap lead, and at the same time presented a bill to the effect that the National Lead Company was indebted to the "Chicago Beer Pipe Cleaning and Supply Company, J. J. Edison, manager, 188 South Clark street," to the amount of $506.08. The receipt bore the indorsement of Forster, and when Edison presented this invoice to Rockwell, the superintendent, Rockwell asked Forster if it was correct and Forster replied that it was, whereupon Rockwell O. K.'d the bill and drew a check for the amount, which Edison received. The evidence tends strongly to show that all scrap metal was received by said company at one place during March, 1910; that Forster had charge of the receiving department, weighing the metals and approving the receipts or invoices; that along about this time Edi-

son had presented a number of invoices and bills in favor of the Chicago Beer Pipe Cleaning and Supply Company for certain material of this character, but Munz, the assistant of Forster in receiving metals, and Jenk, the foreman in charge of all the metals after they were received, both of whom were familiar with the junkmen and drivers, testified they never saw any wagons of the Chicago Beer Pipe Cleaning and Supply Company delivering material there and never saw Edison delivering. The testimony of these two witnesses was also that there was very little scrap tin delivered during March, 1910, or any of the months at about the time when these invoices were presented for goods claimed to have been delivered. It seems that for some reason Jenk and Munz were watching and examining the stock to see if tin pipe or lead had been received by the corporation, apparently being suspicious that some of these bills were not genuine. A saloon-keeper at 188 South Clark street testified that in 1910 he knew Edison, who was frequently in his place, but did not know of any firm or corporation by the name of the Chicago Beer Pipe Cleaning and Supply Company, or a similar name, located at that number, and that he did not know that Edison was connected with any such concern. Another witness who had made an investigation about that time to see if such a company was located there, testified that he could not find it in that building or anyone at that address who knew about such company.

On March 16 or 17, 1910, Rockwell, the general superintendent of the company at Chicago, called Forster to his office and told him something was wrong in Forster's department. Rockwell testified that during the talk Forster broke down, crying, and said he had been stealing; that Rockwell asked Forster how he had been stealing, and Forster said by presenting bills payable to Edison and getting them paid; that the reason he wanted more money was to pay for the renewal of certain patent rights in which he

was interested; that he had gotten $200 on the bill presented by Edison on March 4. Rockwell further testified that Forster told him somewhat in detail as to the system carried on by him and Edison; that the latter would 'phone and Forster would give him a bill O. K.'d by Forster, and after the cash was obtained Forster would meet Edison and get part of the money. Rockwell then asked Forster to go over to see McBerney, the assistant manager. Forster went along with him, but when he reached the office and found that a stenographer was present (Emma Doeserick) to take down what he said he refused to talk. It seems he was acquainted with Miss Doeserick, and she later told him she thought he should make a clean breast of it, but he refused, saying he had to protect himself. Forster, it is true, contradicted this testimony of a confession given to Rockwell, but the evidence in the record tends strongly to substantiate the truth of this testimony as to the facts admitted in this confession; and what Rockwell testified was stated by Forster at that time to him was shown by the evidence to be in accordance with the actual facts as to what he and Edison had been doing. The jury were, without question, justified in believing Rockwell's testimony so corroborated.

Under the reasoning of this court in repeated decisions we do not think the improper remarks of the State's attorney complained of could have prejudiced plaintiff in error with the jury. (*Henry* v. *People,* 198 Ill. 162; *Mash* v. *People,* 220 id. 86; *People* v. *McCann,* 247 id. 130; *People* v. *Scott,* 261 id. 165; *People* v. *Duncan,* 261 id. 339.) We think the evidence showed plaintiff in error guilty beyond all reasonable doubt, and the verdict of the jury should not be set aside on account of the errors complained of.

The judgment of the Appellate Court will therefore be affirmed.                          *Judgment affirmed.*